UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GULF RESTORATION NETWORK, LOUISIANA ENVIRONMENTAL ACTION NETWORK, and SIERRA CLUB, *Plaintiffs*, v. UNITED BULK TERMINALS DAVANT, LLC, *Defendant*. | * * * * * * * * * * * |

# COMPLAINT

For their Complaint, Plaintiffs Gulf Restoration Network, Louisiana Environmental Action Network, and Sierra Club ("Plaintiffs"), make the following allegations against Defendant United Bulk Terminals Davant, LLC ("United Bulk" or "Defendant").

## NATURE OF THE CASE

1. Plaintiffs bring this Clean Water Act citizen enforcement suit against United Bulk because it violates the Act by discharging coal and petroleum coke ("pet coke") into the Mississippi River without a permit. The discharges flow from the Defendant's Bulk Materials Transfer Facility ("Terminal") near Davant, Louisiana. More specifically, the Defendant spills coal and pet coke from a high-speed, high-volume loading operation. This operation involves moving approximately 11 million tons of foreign-bound coal and pet coke annually, and several thousand tons of coal and pet coke per hour, between land and oceangoing ships. Sources of the

1

spills include a loading and conveyance system that extends more than 200 feet into the Mississippi River.

2. Following the Plaintiffs' November 20, 2013, Notice of their intent to bring this enforcement action, the Louisiana Department of Environmental Quality (LDEQ) sent a January 23, 2014 "Compliance Order and Notice of Potential Penalty" to the Defendant. LDEQ issued this order after more than five years of ongoing, illegal discharges by the Defendant. Nonetheless, the Plaintiffs believe that this development is encouraging. Under the Clean Water Act, however, the Plaintiffs do not have the practical option of taking a "wait and see" approach. Instead, to preserve all of their rights under the Act the Plaintiffs must file this lawsuit within 119 days of their Notice. *See* 33 U.S.C. § 1319(g)(6)((B). The Plaintiffs nonetheless intend to be alert to opportunities to work with the Defendant to avoid any unnecessary litigation and to achieve expeditious abatement and cleanup of the Defendant's discharges. Based on current information and belief, however, the violations alleged in its complaint will continue notwithstanding LDEQ's belated compliance order.

## JURISDICTION

3. This Court has jurisdiction over this case under the Clean Water Act. 33 U.S.C. § 1365(a). Further, this Court has jurisdiction under federal question jurisdiction and the Declaratory Judgment Act. 28 U.S.C. § 1331; 28 U.S.C. § 2201.

## VENUE

4. Under 33 U.S.C. § 1365(c)(1), venue is proper in the Eastern District of Louisiana because the source of the violation is located in this district.

## NOTICE

5. On November 20, 2013, Plaintiffs provided a Notice of Violations and Intent to File Suit under the Clean Water Act via certified mail, return receipt requested, to United Bulk, the owner of the coal terminal in question, to affiliate company United Bulk Terminals USA, Inc., and to their registered agent. The Plaintiffs sent copies of this Notice to the Administrator of the U.S. Environmental Protection Agency ("EPA"), the EPA Regional Administrators for EPA Region Six, and the Louisiana Department of Environmental Quality.

6. More than 60 days have passed since Plaintiffs provided their Notice of Violations and Intent to File Suit under the Clean Water Act.

7. Less than 120 days have passed since Plaintiffs provided their Notice of Violations and Intent to File Suit under the Clean Water Act.

## PARTIES

### A. *Plaintiffs*

8. Plaintiff Gulf Restoration Network is a nonprofit corporation organized under the laws of Louisiana and is a person under the Clean Water Act. 33 U.S.C. § 1362(5). Its mission is to unite and empower people to protect and restore the natural resources of the Gulf region. This lawsuit is germane to plaintiff Gulf Restoration Network's purpose.

9. Plaintiff Louisiana Environmental Action Network ("LEAN") is a nonprofit corporation organized under the laws of Louisiana and is a person under the Clean Water Act. 33 U.S.C. § 1362(5). LEAN's mission is to preserve and protect Louisiana's land, air, water, and other natural resources, and to protect the organization's members and other Louisiana residents from pollution threats. This lawsuit is germane to plaintiff LEAN's purpose.

10. Plaintiff Sierra Club is a nonprofit corporation organized under the laws of California, with a registered office in Louisiana and is a person under the Clean Water Act. 33

U.S.C. § 1362(5). Its mission is to practice and promote the responsible use of the earth's ecosystems and resources, and to educate and enlist humanity to protect and restore the quality of the natural and human environment. This lawsuit is germane to plaintiff Sierra Club's purpose.

11. The Plaintiffs and the members whom they represent are "citizens" under the Clean Water Act as "persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g).

12. The violations alleged in this lawsuit injure the Plaintiffs' members, and threaten further injury to the Plaintiffs' members.

13. The Plaintiffs' members have a legally protected interest in the quality of the environment in the vicinity of the Defendant's violations and they are people for whom the aesthetic and recreational values of the area are and will continue to be lessened by the violations and discharges. The members' reasonable concerns about the impact on themselves, their families, their communities, and the environment of the discharges of coal and pet coke into the Mississippi River impairs those members' enjoyment of life and recreation. Similarly, the members' reasonable concerns about the impact on themselves, their families, their communities, and the environment of the Defendant's failure to clean up discharged coal and pet coke from the vicinity, banks, and waters of the Mississippi River impairs their enjoyment of life and recreation. Further, the members' reasonable concerns that coal and pet coke discharges and contamination will further reduce the quality of their lives by continuing to introduce annoying and potentially harmful pollution and by reducing the visual beauty of the River and their communities also impairs their enjoyment of life and recreation in these communities. In addition, the United Bulk violations impair and threaten plaintiffs' members' activities in and around the River. The violations cause Plaintiffs' members to curtail activities that they would

otherwise enjoy, derive less enjoyment from other activities, and suffer reasonable concerns and anxiety about the potential for future harm.

14. The Plaintiffs' members' injuries are fairly traceable to United Bulk's violations alleged in this Complaint. These injuries are actual, direct, concrete and irreparable, and money damages cannot adequately remedy these injuries once they occur. The Clean Water Act empowers this Court to redress these injuries.

### *B.     Defendant*

15. The defendant is United Bulk Terminals Davant, LLC.

16. United Bulk Terminals Davant, LLC is the owner and operator of the Bulk Materials Transfer Facility ("Terminal") located in Davant, Louisiana. United Bulk is a limited liability company domiciled in Davant, Louisiana. United Bulk is a "person" under the Clean Water Act. 33 U.S.C. § 1362(5).

## LEGAL BACKGROUND

### *A. Clean Water Act*

17. The purpose of the Clean Water Act is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

18. The Clean Water Act prohibits the "discharge of any pollutant by any person" into the waters of the United States without a permit. 33 U.S.C. § 1311(a).

19. The Clean Water Act allows a facility to discharge pollutants if the facility complies with a permit issued under the National Pollutant Discharge Elimination System ("NPDES"). 33 U.S.C. § 1342(a).

20. Section 402(b) of the Clean Water Act allows the federal government to delegate the administration of all NPDES permits within a state to that state's government. 33 U.S.C. §

1342(b). The State of Louisiana has created such a permitting program in the Louisiana Pollutant Discharge Elimination System ("LPDES"). L.A.C. 33: Ch. IX, § 301.

21. State-issued LPDES permits remain subject to the jurisdiction of federal district courts. 33 U.S.C. § 1365(a).

22. Under the Clean Water Act citizen suit provision, "any citizen may commence a civil action on his own behalf … against any person … who is alleged to be in violation of … an effluent standard or limitation under this chapter…." 33 U.S.C. § 1365(a)(1).

23. In its citizen suit provision, the Clean Water Act defines "effluent standard or limitation under this chapter" in 33 U.S.C. § 1365(f) to include "an unlawful act" under 33 U.S.C. § 1311(a) and, *inter alia*, discharges violating "a permit or condition thereof issued under section 1342 of this title, which is in effect under this chapter."

24. The Clean Water Act defines "discharge of a pollutant" in 33 U.S.C. § 1362(12) to mean "any addition of any pollutant to navigable waters from any point source."

25. The Clean Water Act defines "pollutant" in 33 U.S.C. § 1362(6) to include "solid waste … and industrial, municipal, and agricultural waste discharged into water." Coal and pet coke are pollutants.

26. The Clean Water Act defines "navigable waters" to include "the waters of the United States ….." 33 U.S.C. § 1362(7). The Mississippi River is a navigable water.

27. A "point source" means "any discernible, confined and discrete conveyance … from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

28. Citizen suits under the Clean Water Act allow for civil penalties as defined in 33 U.S.C. § 1319(d), which, in conjunction with 40 C.F.R. § 19.4 (which adjusts the amount for

inflation), permits a court to impose civil penalties not to exceed $37,500 per day per violation of the Act.

**FACTS**

29. United Bulk's Terminal property occupies nearly three miles of riverfront between mile markers 53.9 and 56.7 of the Mississippi River's east bank in Plaquemines Parish, Louisiana. The Terminal's coordinates are 29º 37' 11.64" North latitude by 89º 53' 33.88" West longitude.

30. With a storage capacity of 4.5 million tons and an annual throughput of more than

31. The Terminal is the southernmost dry-bulk storage terminal on the Mississippi River, and thus the closest such facility to the Gulf of Mexico in Louisiana.

32. The Terminal currently stores and transfers coal and pet coke.

33. The EPA has determined that when precipitation falls upon accumulations of coal, "the water that runs off these piles can flush heavy metals from the coal, such as arsenic and lead, into nearby bodies of water." Description of Environmental Impacts of Coal, Environmental Protection Agency, http://www.epa.gov/cleanenergy/energy-and-you/affect/coal.html (last visited February 27, 2014).

34. Upon information and belief, United Bulk had been illegally discharging coal and pet coke into the River and onto the batture for years before Plaintiffs first documented an unpermitted discharge at the Terminal in 2009.

35. Plaintiffs documented unpermitted discharges of coal or pet coke from the Terminal on December 31, 2009. Plaintiffs have documented additional unpermitted discharges on more than 10 occasions since then, with the most recent documented violation occurring on February 18, 2014.

36. Indeed, every time the Plaintiffs have visited vicinity of the terminal, they have witnessed evidence of unpermitted discharges into the River.

37. United Bulk has continued to unlawfully discharge coal and pet coke into the Mississippi River through the present day. Upon information and belief, United Bulk has discharged into the Mississippi River without a permit on a daily basis for at least the last five years whenever the Terminal has been in operation. Upon information and belief, United Bulk continues to discharge into the Mississippi River without a permit on a daily basis whenever the Terminal is in operation.

38. The Terminal has discharged sufficient coal and pet coke into the River to produce visible spills in the River on a regular basis.

39. The Terminal's discharges have spilled sufficient coal and pet coke onto the batture to produce visible accumulations below the River's high-water line.

40. The Terminal's discharges originate from at least two sources: 1) the Terminal's conveyor system and associated equipment; 2) the product spilled onto the batture adjacent to the Terminal.

41. First, coal and pet coke falls from the conveyor belts and associated equipment that transport these materials between the Terminal's permitted stockpiles and river barges and ocean-going vessels during unloading and loading, respectively. Coal also adheres to the conveyor belts during this process and discharges into the River as the belts loop back under themselves while in operation. Moreover, the conveyor system discharges spilled coal and pet coke that temporarily adheres to the conveyor structures before falling into the River even when the conveyors are not operating. Finally, the conveyors and associated equipment discharge additional coal and pet coke into the River during precipitation events.

42.     Second, coal and pet coke spills onto the batture during loading and unloading operations, and is allowed to remain and accumulate there. This pollution source discharges coal and pet coke every time these materials are pushed into the River, every time they slough into the River, and every time they are carried into the River during precipitation events. Furthermore, this pollution source discharges coal and pet coke every time the River rises to reach the accumulations on the batture and washes the material and related soluble toxins into the River.

43.     These discharges are ongoing, intermittent, recurring, and continuing.

44.     Furthermore, coal and pet coke has accumulated, and continues to accumulate, on the riverbed beneath the conveyor system, adjacent to the batture, and downstream of the terminal, where the accumulations emit toxins and coal into the water every day. Spilled and discharged coal and pet coke has also accumulated, and continues to accumulate in the river in the vicinity of the Terminal, in the river downstream from the Terminal, and downstream along the river's banks.

45.     United Bulk is the Terminal's sole operator and owner.

46.     United Bulk possesses a LPDES permit authorizing the Terminal's discharge of stormwater into the receiving waters of American Bay, which is not contiguous with the Mississippi River. The permit, titled LPDES Permit Number LA0070602, does not authorize or otherwise anticipate discharges into the River.

47.     Permit Condition T-11 of LPDES Permit Number LA0070602 requires that United Bulk "clean up and dispose of all spilled product and other spilled wastes immediately according to all applicable regulations..." The Defendant has failed on a daily basis to clean up "all" spilled products and wastes for at least the past five years, and continues to fail on a daily

basis to clean up such waste — including without limitation waste that is now located in the river.

48. Under Louisiana's applicable regulations, United Bulk "shall take all reasonable steps to minimize or correct any adverse impact on the environment resulting from noncompliance with the permit, including such accelerated or additional monitoring as necessary to determine the nature and impact of the noncomplying discharge." La. Admin. Code tit. 33, pt. IX, § 6511. The Defendant has failed on a daily basis to take all reasonable steps to minimize or correct the adverse environmental impacts resulting from its spilled wastes for at least the past five years, and continues to fail on a daily basis to minimize or correct the environmental impacts from its waste — including without limitation waste that is now located in the river. United Bulk has also failed on a daily basis to monitor its discharges to determine their nature and impact.

49. This lawsuit is not precluded by governmental action. Specifically, neither the federal government nor any state has commenced or is diligently prosecuting a judicial action to require compliance with the Clean Water Act standards and limitations at issue in this lawsuit.

50. Upon information and belief, without injunctive relief or civil penalties, United Bulk will continue to discharge coal and pet coke into the Mississippi River in violation of the Clean Water Act and will continue to fail to clean up spilled waste, causing further injury to the Plaintiffs, their members, the public, and the environment. Injunctive relief and civil penalties are also necessary to deter future violations and mitigate contamination from the discharges.

## FIRST CAUSE OF ACTION

*(Violation of the Clean Water Act for discharge of coal and pet coke without a permit)*

51.     The Terminal is located adjacent to, within, and above the Mississippi River, which is a navigable water of the United States.

52.     The Terminal's conveyor system and associated equipment in and above the River is a discrete conveyance, and therefore a point source.

53.     United Bulk has no Clean Water Act permit to discharge coal and pet coke from the conveyor system into the River.

54.     United Bulk's ongoing spills of coal and pet coke from the conveyor system identified in the paragraphs above are discharges from a point source into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person except in compliance with a permit. 33 U.S.C. § 1311.

55.     United Bulk's ongoing discharge of coal and pet coke into the Mississippi River violates an effluent standard or limitation within the meaning of the Clean Water Act, 33 U.S.C. § 1365(f).

## SECOND CAUSE OF ACTION

*(Violation of the Clean Water Act for discharge of coal and pet coke without a permit)*

56.     United Bulk created the Terminal's accumulations of coal and pet coke on the batture. These accumulations create unpermitted discharges into the Mississippi River as described in the paragraphs above. The accumulations of coal and pet coke on the batture are a point source.

57.     United Bulk has no Clean Water Act permit to discharge coal and pet coke from the batture into the River.

58. United Bulk's ongoing spills of coal and pet coke from the batture described in the paragraphs above are discharges from a point source into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person except in compliance with a permit. 33 U.S.C. § 1311.

59. United Bulk's ongoing discharges of coal and pet coke into the Mississippi River violate an effluent standard or limitation within the meaning of the Clean Water Act, 33 U.S.C. § 1365(f).

### THIRD CAUSE OF ACTION

*(Violation of Clean Water Act permit)*

60. United Bulk's ongoing failure to clean up spills of waste located near and in the Mississippi River violate Permit Condition T-11 of LPDES Permit Number LA0070602, which requires United Bulk to "clean up and dispose of all spilled product and other spilled wastes …."

61. Each day of United Bulk's continuing failure to clean these spills up is a separate and additional violation of the permit.

62. United Bulk's ongoing failure to "clean up and dispose of all spilled product and other spilled wastes" violates an effluent standard or limitation within the meaning of the Clean Water Act, 33 U.S.C. § 1365(f).

63.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment as follows:

A. A declaration that United Bulk is in violation of the Clean Water Act.

B. An injunction restraining United Bulk from leaking, discharging, or disposing of coal or pet coke from the Terminal into the Mississippi River.

C. An injunction ordering United Bulk take all steps necessary to remove all coal and pet coke from the batture and from the submerged bed of the Mississippi River adjacent to, and downstream of, the Terminal, including such monitoring as may be necessary to discover, and confirm full cleanup and disposal of, all spilled product and other spilled wastes.

D. An injunction mandating that United Bulk fund long-term independent monitoring of the remediation efforts and the Terminal's ongoing operations.

E. An award of civil penalties, payable to the U.S. Treasury, for each day United Bulk violates the Clean Water Act in an amount of up to $37,500 per day until such time as United Bulk eliminates all unpermitted discharges of coal and pet coke from the Terminal and cleans up all spilled coal and pet coke.

F. An award of civil penalties, payable to the U.S. Treasury, for past violations of the Clean Water Act through the present.

G. An award of litigation costs, including attorney and expert witness fees, pursuant to 33 U.S.C. § 1365(d).

H. Any other relief this Court may deem appropriate.

Respectfully submitted on March 18, 2014,

s/ Benjamin Fuchs
Benjamin Fuchs, Student Attorney

s/ Machelle Hall
Machelle Lee Hall, Staff Attorney La Bar No. 31498
Adam Babich, La. Bar No. 27177
Tulane Environmental Law Clinic
6329 Freret Street
New Orleans, LA 70118-6321
Phone: (504) 865-5789; direct dial 862-8800 or 862-8814
Fax: (504) 862-8721
Counsel for the Plaintiffs